# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ERNEST A. BOOKER-BROWN,[1] | CASE NO. 5:23-CV-01349-PAB |
| Petitioner, | JUDGE PAMELA A. BARKER |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN SHELBIE SMITH,[2] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

On July 5, 2023, Mr. Brown, representing himself, petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a), and the matter has been referred to me under Local Civil Rule 72.2 to prepare a report and recommendation. (Non-document entry of July 20, 2023). On October 18, 2023, then-Respondent David W. Gray, in his official capacity as Warden for the Belmont Correctional Institution (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #8). On December 21, 2023, Mr. Brown filed his Traverse. (ECF #10).

As outlined below, I recommend the District Court **DISMISS** Mr. Brown's petition.

---

[1]     When petitioner filed his petition, he referred to himself as Ernest A. Booker-Brown and signed the petition E. Brown. The case captions in the state-court record largely refer to petitioner as both Mr. Booker or Mr. Brown. (*See, e.g.,* ECF #8-1 at PageID 552, 554). For consistency, I refer to petitioner using the name signed on the petition, Mr. Ernest Brown.

[2]     Shelbie Smith replaced David W. Gray as Warden of the Belmont Correctional Institution, where Mr. Brown is incarcerated. Under Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Smith is automatically substituted as the Respondent.

PROCEDURAL HISTORY

**A.     Trial Court Proceedings**

On July 24, 1996, a grand jury in Stark County, Ohio, indicted Mr. Brown for rape, aggravated burglary, and kidnapping, each with a repeat-violent-offender specification. (ECF #8-1 at PageID 46-47). Mr. Brown pled not guilty. (*Id.* at PageID 50). A jury convicted him of all charges. (*Id.* at PageID 52-53). The trial court sentenced Mr. Brown to an aggregate term of 60 years' imprisonment and appointed counsel to pursue his appeal. (*Id.* at PageID 56-61). On appeal, the Ohio Court of Appeals, Fifth Appellate District, determined the trial court abused its discretion in not granting a continuance to allow Mr. Brown to retain counsel or appoint new counsel where the record "clearly demonstrated that the attorney-client relationship was irretrievably broken" and remanded the case for a new trial. (*Id.* at PageID 306-10).

At the second trial, the jury found Mr. Brown not guilty of rape but guilty of aggravated burglary and kidnapping. (*Id.* at PageID 313-14). On June 9, 1997, the trial court found Mr. Brown guilty of the repeat-violent-offender specifications and imposed 10 years' imprisonment on each count and specification, all to be served consecutively for an aggregate sentence of 40 years' imprisonment and advised Mr. Brown of appellate rights under Ohio Criminal Rule 32. (*Id.* at PageID 316-21). That day, the trial court appointed appellate counsel. (*Id.* at PageID 561).

On June 27, 1997, appellate counsel moved to withdraw. (*Id.*). Then, the trial court appointed a series of appellate counsel for Mr. Brown, the last being appointed on July 9, 1997. (*Id.*). In judgment entry from that date, the trial court informed Mr. Brown it would not appoint new counsel again. (ECF #10-2 at PageID 623-24). The trial court sent copies of the order to Mr. Brown, appointed counsel, and the prosecutor. (*Id.* at PageID 624).

2

**B.      Motion for Judicial Release**

Twenty-two years later, on November 29, 2018, Mr. Brown moved for judicial release. (ECF #8-1 at PageID 323). The trial court denied the motion. (*Id.* at PageID 333).

**C.      Motion for Post-Conviction Relief**

On September 13, 2019, Mr. Brown filed a motion for resentencing, asserting the offenses for which he was convicted should merge because they are allied offenses of similar import (ECF #8-1 at PageID 335-38) and later clarified he filed the motion to "remedy the violation of his Fifth Amendment right to protection against double jeopardy." (*Id.* at PageID 347). The trial court recharacterized Mr. Brown's motion was a petition for post-conviction relief as defined in Revised Code § 2953.21 because he sought to vacate or correct his sentence because his constitutional rights were violated. (*Id.* at PageID 383-84). On June 2, 2020, the court concluded the petition was untimely and the claim was barred by the doctrine of res judicata because he could have raised the merger issue on direct appeal but did not. (*Id.* at PageID 385-86).

Mr. Brown appealed the decision to the Fifth District and requested appellate counsel. (*Id.* at PageID 389-94). The Fifth District appointed counsel and permitted him to supplement the record with any transcripts. (*Id.* at PageID 396, 407). Counsel determined transcripts were not necessary to adjudicate the issue raised: whether the trial court abused its discretion by converting Mr. Brown's motion for resentencing to a petition for post-conviction relief and not addressing his resentencing issues. (*Id.* at PageID 407-08). On June 3, 2021, the Fifth District affirmed the trial court's judgment after concluding the motion was a petition for post-conviction relief, untimely, and barred by res judicata. (*Id.* at PageID 460-65).

**D.      Motion for Transcript**

3

On October 17, 2022, Mr. Brown requested the trial court provide transcripts from the second trial to perfect his direct appeal. (ECF #8-1 at PageID 477-78). The trial court denied the motion as moot, noting a transcript had already been provided and appointed counsel had filed an appeal. (*Id.* at PageID 481).

**E.    Motion for Delayed Appeal**

On October 18, 2022, Mr. Brown filed a notice of appeal, a motion for leave to file a delayed appeal, and an affidavit stating that none of his court-appointed attorneys filed a notice of appeal on his behalf. (ECF #8-1 at PageID 483-94). The Fifth District denied the motion because Mr. Brown did not establish sufficient reasons justifying the 25-year delay. (*Id.* at PageID 506-07). Though Mr. Brown claimed he did not file a notice of appeal because appointed counsel was supposed to do that, the Fifth District determined this justification did not explain why he waited over 25 years to pursue a delayed appeal. (*Id.* at PageID 506). The Fifth District denied Mr. Brown's motion for reconsideration (*id.* at PageID 509-28) as untimely. (*Id.* at PageID 530).

On March 6, 2023, Mr. Brown appealed to the Supreme Court of Ohio and filed a memorandum in support of jurisdiction. (*Id.* at PageID 532-47). On May 23, 2023, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 552).

FEDERAL HABEAS PETITION

On July 5, 2023, Mr. Brown petitioned for a writ of habeas corpus and asserted the following Grounds for Relief:

> **Ground One**: Appellant was denied his Sixth and Fourteenth Amendment constitutional right to a direct appeal to challenge his conviction and sentence.
>
> **Supporting facts**: The petitioner verbally expressed in 1997 his intent to appeal the jury's findings of guilt, yet, it is 2023 and Petitioner has not had his first direct appeal as of right, due in part to the actions of the trial court, the actions of the appointed

4

appellate counsel, and the decision rendered by the court of appeals denying leave to file delayed appeal.

**Ground Two**: Petitioner was denied his Sixth and Fourteenth Amendment right to appeal his conviction and sentence due to ineffective assistance of court appointed appellate counsel where counsel failed to file a timely notice of appeal.

**Supporting facts**: The Petitioner asserts that he was deprived of his right to a first direct appeal because his appointed appellate counsel failed to file a timely notice of appeal on his behalf in accordance with his express request immediately after the sentencing hearing.

**Ground Three**: Petitioner was denied his Sixth and Fourteenth Amendment due process right to a fair and adequate delayed appeal review where the court of appeals failed to determine whether the petitioner's ineffective assistance of counsel claim provided adequate cause for failing to timely file notice of appeal.

**Supporting facts**: The Petitioner asserts that he was denied due process when his Rule 5(a) motion for leave to file a delayed appeal was denied because his failure to perfect his appeal rested squarely on the ineffective assistance of his appellate counsel where counsel failed to file a timely notice of appeal. The state court's refusal to allow a delayed appeal amounts to a due process violation.

**Ground Four**: The petitioner was denied the effective assistance of appellate counsel where counsel failed to file timely notice of appeal.

**Supporting facts**: Petitioner was deprived of his right to an appeal because his appointed Appellate counsel failed to file a timely notice of appeal on his behalf in accordance with petitioner's express request to appeal the conviction and sentence given immediately after the sentencing hearing.

**Ground Five**: Petitioner was denied due process and equal protection under the law when he was denied a copy of his trial transcript relating to the second trial where the transcripts have never been transcribed.

**Supporting facts**: The petitioner asserts that he was denied due process and equal protection under the law because he was denied the trial transcript for the purpose of direct appeal. In fact, the trial transcripts have never been transcribed. Access to the transcript was necessary in order to receive a full and effective appeal. Appellant further asserts that without the transcript, he is unable to prepare a brief required for appellate review of his case.

(ECF #1 at PageID 1-20) (cleaned up).

5

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Brown's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome certain procedural barriers, including the statute of limitations.

AEDPA establishes a one-year statute of limitations applicable to applications for a writ of habeas corpus by a person in custody under the judgment of a state court. 28 U.S.C. § 2244(d). The strict filing deadline promotes the finality of convictions and curbs dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003); *see also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the one-year limitations period in § 2244(d)(1) meets the interest in the finality of state court judgments). The limitations period is not jurisdictional; it is an affirmative defense the responding party must raise in its first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see*

6

*also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the State asserts the limitations period as a barrier to habeas relief and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

AEDPA's statute of limitations period runs from the latest of four dates:

(A)   The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A state-court judgment becomes "final" on direct review for purposes of § 2244(d)(1)(A) when direct review concludes or the time for pursuing direct review in state court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

In some cases, the limitations period is tolled to allow courts to review an otherwise time-barred habeas petition. Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled while a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending. AEDPA's statute of limitations is also subject to equitable tolling, which allows courts to review time-barred petitions if the petitioner can establish

7

that he diligently pursued his rights and that some "some extraordinary circumstance stood in his way and prevented timely filing" of the habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Finally, a petitioner who presents a credible claim of actual innocence is entitled to equitable tolling of AEDPA's limitations period. *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005) ("where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims"). The exception is rare and only applied in extraordinary cases. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

ANALYSIS

The State argues the claims in Grounds One, Two, Four, and Five cannot be reviewed because Mr. Brown did not file the petition within the one-year limitations period under 28 U.S.C. § 2244(d)(1). (ECF #8 at PageID 26-34). The State also argues Ground Three, alleging errors and deficiencies that occurred in state post-conviction proceedings, is not cognizable on federal habeas review. (*Id.* at PageID 34-38).

In response to the State's assertion that the petition is untimely, Mr. Brown argues he is entitled to a later start date under § 2244(d)(1)(B) or (D) and to equitable tolling from the date of sentencing to October 18, 2022, when he filed a notice of appeal and delayed appeal, because extraordinary circumstances impeded his ability to pursue his claims on direct appeal. (ECF #10 at PageID 598, 612). If so, the claims are timely. Mr. Brown also asserts Ground Three is cognizable because counsel failed to inform him of his appellate rights, constituting ineffective assistance of

8

counsel and offending due process. (*Id.* at PageID 592) (citing *Wolfe v. Randle*, 267 F.Supp.2d 743, 746-48 (S.D. Ohio Mar. 27, 2003)).

**A.     Grounds One, Two, Four, and Five are untimely under 28 U.S.C. § 2244(d).**

Mr. Brown's arguments for a later start date under §§ 2244(d)(1)(B) and (D) and for equitable tolling rest on the same set of assertions. At the sentencing hearing on June 9, 1997, the trial court informed Mr. Brown of his appellate rights and appointed John Mackey to represent him on appeal. (ECF #8-1 at PageID 321, 561). Mr. Mackey moved to withdraw as counsel on June 27, 1997. (*Id.* at PageID 561). The trial court appointed Anthony Kaplanis on July 2, 1997, and Michael Boske on July 8, 1997. (*Id.*). On July 9, 1997, the trial court appointed Edward Asper. (*Id.*). In the order appointing Mr. Asper, the court stated:

> The Court finds that previous counsel, Mr. Mackey withdrew, in that the Defendant indicated to Mr. Mackey that he did not have confidence in Mr. Mackey handling the appeal in this matter. The Court further finds that Mr. Booker has continuously, throughout the course of his proceedings, attempted to manipulate the Court system by firing various appointed counsel who have represented him at various stages of the proceedings. The Court finds that counsel have adequately and competently represented Mr. Booker and the Court would note for the file that the Court will not appoint further appellate counsel in this matter. Should Mr. Booker not wish the services of Attorney Asper, he may retain private counsel to represent him pursuant to any order of the Fifth District Court of Appeals or he may represent himself without the benefit of legal counsel.

(ECF #10-2 at PageID 623-24). Mr. Brown's time to appeal expired one day later. Appointed counsel did not file a notice of appeal.

Mr. Brown claims he tried to contact Mr. Asper but did not succeed. (ECF #1 at PageID 11). He also claims he sought assistance from other attorneys when he could not reach Mr. Asper, but they declined to represent him because he already had counsel of record. (ECF #1 at PageID 12). In an unsworn declaration attached to his habeas materials, Mr. Brown alleges he sought help

from the Innocence Project in November 1998 and from the Ohio Defendants Union of Defense in 2001. (ECF #10-1 at PageID 619). In support, he attached certified mail receipts showing proof of outgoing mail to the Innocence Project in November 1998 and February 2000, copies of return letters from the Innocence Project in June 1999 (inviting him to elaborate on his case) and May 2004 (declining to accept his case), and a 2001 letter from Ohio Defendants Union of Defense informing him it would cost $3,000 to gather requested records from the county clerk. (ECF #8-1 at PageID 629; ECF #10-8 at PageID 631; ECF #10-9 at PageID 632; ECF #10-11 at PageID 635). In 1999, his family tried to obtain a different attorney for his appeal, but they were told nothing could be done for Mr. Brown because there was no trial transcript. (ECF #10-1 at PageID 619). He did not make further inquiry into the matter of the transcript for over twenty years.

In 2018, he claims to have instructed a group of three attorneys to move for delayed appeal, but instead they sought judicial release. (*Id.*). In 2020, his brother hired a private investigative service to obtain trial transcripts from the Stark County Clerk of Court. (*Id*; *see also* ECF #10-5 at PageID 627). In a letter to Mr. Brown, the investigator stated the Stark County Clerk's Office did not have a record of transcripts from the second trial. (*Id.*). The investigator also explained that the Stark County Reporters Office informed him the transcripts from the second trial were never ordered or transcribed and they retain records for only ten years. (*Id.*). In addition to this evidence, Mr. Brown asserts he honestly believed the direct appeal was still pending until September 2022 when he asked his prison case manager to look at the docket. (*Id.* at PageID 620). According to Mr. Brown, no one, including the trial court, appellate counsel of record, or the other legal sources he contacted, advised him of his right to file a delayed appeal and he did not learn he could do so until an inmate law clerk informed him in October 2022. (*Id.* at PageID 619-

21). On October 17, 2022, Mr. Brown filed a notice of appeal and motion for delayed appeal in the Fifth District. (ECF #8-1 at PageID 483-91). He also requested the trial court prepare a complete transcript at the State's expense. (*Id.* at PageID 477-78).

Accepting these allegations as true, it appears Mr. Brown tried to seek help from outside sources (*see* ECF #10-1 at PageID 619) but did not inform the trial court or appellate court that appellate counsel had, in effect, abandoned him at a stage when he was entitled to counsel. Mr. Brown, citing the order appointing Attorney Asper, claims the trial court is to blame for this. In his declaration, Mr. Brown claims the court's order left him fearful to inform the court that Attorney Asper had not communicated with him because he thought doing so would waive his right to the assistance of counsel. (*Id.* at PageID 620).

My analysis begins with determining the limitations period start-date under § 2244(d)(1). Then, I considered whether statutory tolling under § 2244(d)(2) or equitable tolling apply to render Mr. Brown's application timely.

1. **Under 28 U.S.C. § 2244(d)(1)(A), Mr. Brown's direct appeal concluded in 1997 and the one-year limitations period lapsed in 1998.**

The trial court sentenced Mr. Brown on June 9, 1997. (ECF #8-1 at PageID 316). Under Ohio Appellate Rule 4, Mr. Brown had 30 days, or until July 10, 1997, to appeal the trial court's judgment and sentence. He did not appeal. Therefore, under § 2244(d)(1)(A), Mr. Brown had until July 11, 1998 to petition for a writ of habeas corpus in federal court. Under this start date, absent entitlement to a later start date or tolling, Mr. Brown's petition is untimely.

**2.      Under 28 U.S.C. § 2244(d)(1)(B), the state impediment to filing a federal habeas petition was removed in 1998 or 1999 and the one-year limitation period lapsed in 1999 or 2000.**

Under § 2244(d)(1)(B), the one-year limitation period begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." By its terms, a petitioner who asserts entitlement under the statute must show the State action both violated his constitutional rights and prevented him from filing his federal habeas petition. The petitioner must show "a causal relationship between the unconstitutional state action and being prevented from filing the petition." *Winkfield v. Bagley,* 66 F.App'x 578, 582-83 (6th Cir. May 28, 2003) (unreported) (internal quotation and citation omitted). In *Winkfield,* the Sixth Circuit stated that a petitioner does not meet the criteria when he fails to "'allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitation period expired.'" *Id.* at 583 (quoting *Neuendorf v. Graves,* 110 F.Supp.2d 1144, 1153 (N.D. Iowa 2000)).

In his Traverse, Mr. Brown asserts the State prevented him from timely filing a direct appeal, which, in turn, prevented him from timely filing the federal habeas petition, thus entitling him to a later limitations-period start date. (ECF #10 at PageID 607). He identifies the following as State impediments: (1) the trial court failed to notify appointed counsel of the appointment; (2) the trial court failed to order appointed counsel to withdraw, depriving Mr. Brown of his right to self-representation; (3) appellate counsel and others in the legal community failed to notify him that a direct appeal was not filed or that he had the right to file a delayed appeal; (4) appellate counsel failed to file a notice of appeal and order trial transcripts; and (5) the trial court's unlawful removal of the right to appointment of counsel. (ECF #10 at PageID 608-12).

12

a.   **The trial court did not deprive Mr. Brown of his Sixth Amendment right to counsel.**

The Constitution does not require states to grant appeals as of right to criminal defendants seeking review of alleged errors in the state trial court. *Estelle v. Dorrough*, 420 U.S. 534, 536 (1975); *McKane v. Durston*, 153 U.S. 684, 687 (1894) (stating that the right to appeal is not a necessary element of due process of law). But when a state does, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). To make the right of appeal meaningful, a state must provide an indigent criminal appellant with counsel. *Douglas v. California*, 372 U.S. 353, 357-58 (1963). The right to counsel is limited to the first appeal of right. *See Ross v. Moffitt*, 417 U.S. 600, 602 (1974).

Mr. Brown claims the trial court failed to notify appellate counsel of the appointment, effectively denying him the right to counsel. (ECF #10 at PageID 608). In support, he points to the lack of docket entries ordering the clerk to serve notice to appellate counsel or otherwise informing appellate counsel of his appointment. (*Id.*). He also argues there is a pattern of intentional failure to notify appointed counsel of the appointment, established by his counsel's statement to the Fifth District that he did not receive notice of his appointment (ECF #8-1 at PageID 406) and by the failure of all appointed counsel to file any briefs on his behalf (ECF #10 at PageID 601). Despite Mr. Brown's protestations to the contrary, the docket reflects the trial court appointed appellate counsel and notified Mr. Brown of his right to appeal. (ECF #8-1 at PageID 561). Absent "reliable evidence to the contrary, a federal district court should presume the accuracy of a court clerk's docket entries." *Robinson v. Henderson*, No. 3:23-cv-00089-BMB, 2024 WL 4856061 (N.D. Ohio Nov. 21, 2024) (citation omitted), *report and recommendation adopted*,

2024 WL 5152788 (N.D. Ohio Dec. 18, 2024). The evidence Mr. Brown presents does not suggest a failure to notify appointed counsel. Therefore, the alleged impediment does not justify a later start date under § 2244(d)(1)(B).

   **b.** **The trial court did not deprive Mr. Brown of his Sixth Amendment right to self-representation.**

  Next, Mr. Brown asserts the trial court impeded his ability to file a direct appeal when it did not order appointed counsel to withdraw, depriving Mr. Brown of the ability to represent himself because he has no constitutional right to hybrid representation. (ECF #10 at PageID 609). Under this line of reasoning, Mr. Brown suggests he was prevented from filing a notice of appeal on his own because Attorney Asper remained counsel of record. His argument is not persuasive.

  Mr. Brown's theory rests on several misplaced assumptions. First, he contends the trial court failed "to make sure appointed counsel provided adequate representation on appeal after knowing that neither counsel filed the notice of appeal or motion ordering the trial transcripts." (*Id.* at PageID 611). He cites no authority, and I cannot find any, requiring a trial court monitor appellate counsel's actions on appeal. This includes no authority requiring the trial court verify that appellate counsel file a notice of appeal. Rather, "parties have an affirmative duty to monitor the dockets to keep apprised of the entry of orders that they may wish to appeal." *Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012); *see also Boone v. Lazaroff*, No. 2:17-CV-332, 2020 WL 2711403, at *2 (S.D. Ohio May 26, 2020), (applying *Yeschick* in habeas proceedings), *report and recommendation adopted*, 2020 WL 3488734 (S.D. Ohio June 26, 2020); *see also State v. Jenkins*, C.A. No. 22CA011874, 2023 WL 4858313, at *3 (Ohio Ct. App. July 31, 2023) (same duty under Ohio state law). And if the trial court is not burdened with that task, it need not proactively appoint new

counsel or order appointed counsel to withdraw when a defendant fails to bring the issue to the court's attention.

Next, Mr. Brown asserts he tried to contact Attorney Asper many times without success. (ECF #1 at PageID 11). Assuming this is true, Mr. Brown was aware of some issue about his appellate counsel's performance, but despite that, he did not request assistance from the state courts. His claimed fear of contacting the trial court makes little sense given the trial court's explanation. In the order appointing Mr. Asper, the trial court expressed frustration with Mr. Brown's past conduct in the case, emphasizing his statements that prompted Mr. Mackey to withdraw. There is no reason to believe the trial court would not take appropriate action under circumstances suggesting appellate counsel was not acting appropriately as counsel. And even if the trial court's order did act to preclude or prevent Mr. Brown from requesting new counsel in that court, it does not justify Mr. Brown's failure to seek assistance directly from the appellate court.

Last, Mr. Brown assumes that because there is no right to hybrid representation, he could not file his own notice of appeal. The Sixth Amendment guarantees a criminal defendant the right to counsel and the corollary right to waive counsel and proceed pro se. *Faretta v. California,* 422 U.S. 806, 807, 819-20 (1975). Hybrid representation contemplates the defendant and counsel acting as co-counsel and sharing responsibilities. *See State v. Martin,* 816 N.E.2d 227, 232 (Ohio 2004). As Mr. Brown correctly asserts, "there is no constitutional right to hybrid representation." *United States v. Cromer,* 389 F.3d 662, 681 n.12 (6th Cir. 2004) (citations omitted); *see also Martin,* 816 N.E.2d at 232 ("in Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent each other and may not be asserted simultaneously"). Therefore, Ohio

15

appellate courts "do not accept hybrid briefing, i.e., briefing by a party pro se and by that party's appellate counsel." *State v. Minkner*, 957 N.E.2d 829, 832 (Ohio Ct. App. June 24, 2011). But Ohio's bar on hybrid representation did not prevent Mr. Brown from filing a notice of appeal and informing the Fifth District of Attorney Asper's failure to act as counsel. There is no reason to believe the Fifth District would not rectify the situation if made aware that appointed counsel's inactions interfered with Mr. Brown's right to counsel on direct appeal.

For these reasons, I conclude the trial court's actions and inactions do not entitle Mr. Brown to a later start date under § 2244(d)(1)(B).

### c. The alleged actions and inactions of legal groups and attorneys who declined to represent Mr. Brown did not deprive him of his Sixth Amendment right to effective assistance of counsel.

Mr. Brown claims he was deprived of effective assistance of appellate counsel when the legal groups and other attorneys he contacted for assistance failed to inform him a direct appeal had not been filed in his case and he had a right to file a delayed appeal. This argument fails because none of those legal groups and attorneys agreed to represent Mr. Brown or appeared on his behalf in the case.

The right to effective assistance of counsel only applies to the "lawyer who is representing the criminal defendant or otherwise appearing on the defendant's behalf in that case." *United States v. Martini*, 31 F.3d 781, 782 (9th Cir. 1994) (citing *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994)). It does not apply to every lawyer a criminal defendant consults about his case. *Santosuosso v. United States*, 74 F.3d 1240 (6th Cir. 1996) (table) (citing *Martini*, 31 F.3d at 782); *see also Stoia*, 22 F.3d at 769 (noting in dicta that the right to effective assistance of counsel "does not

extend to those cases where a non-appearing attorney . . . gives a defendant legal advice even though he has not been retained by the defendant to help prepare his defense").

Here, Mr. Brown does not claim those legal groups and other attorneys gave him legal advice; rather, he asserts they failed to inform him about the absence of a direct appeal and his right to seek a delayed appeal and this failure constitutes ineffective assistance of counsel. But this alleged failure does not implicate the right at all because nothing in the record shows any of those lawyers agreed to represent Mr. Brown. They do not appear on the docket and, according to the evidentiary materials Mr. Brown submitted, the attorneys and groups with whom he consulted each declined to represent him. (ECF #8-1 at PageID 524; ECF #10-8 at PageID 631; ECF #10-1 at PageID 619). This leads to the inevitable conclusion that those legal groups and other attorneys' alleged actions inactions did not result in a constitutional violation that prevented Mr. Brown from filing his application for habeas corpus here.

> **d.  Appellate counsel's ineffective assistance did not prevent Mr. Brown from timely filing a federal habeas petition.**

Appellate counsel, on the other hand, is constitutionally ineffective by failing to perfect a timely appeal in contravention of the defendant's explicit wishes. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (explaining that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"). Appellate counsel's failure to perfect a direct appeal contrary to the defendant's request is attributable to the State and therefore constitutes state action under § 2244(d)(1)(B). *See Winkfield*, 66 F.App'x at 582; *Waldron v. Jackson*, 348 F.Supp.2d 877, 884 (N.D. Ohio Oct. 15, 2004); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default to be imputed to the State.").

The next question to be resolved under § 2244(d)(1)(B) is whether the unconstitutional state action prevented the petitioner from filing his federal habeas petition. In *Winkfield*, an unpublished Sixth Circuit decision, the petitioner argued he was prevented from timely filing his federal habeas petition because his appellate counsel "not only failed to ever advise his client the new trial motion had been denied and thus the time to appeal was running, but actively misled him into believing the motion and direct appeal were still pending." 66 F.App'x at 582. The Sixth Circuit determined the petitioner did not show his appellate counsel's failure to pursue a direct appeal in state court prevented him from filing a timely habeas application because the petitioner "ha[d] not alleged [appellate counsel] erroneously informed him that he had no federal remedies," and "[n]o connection has been established between [appellate counsel's] ineffective assistance and [the petitioner's] ability to file a federal habeas petition." *Id.* at 583.

More recently, in another unpublished decision, *Oberacker v. Noble,* No. 18-3589, 2018 WL 4620666 (6th Cir. 2018), the Sixth Circuit stated, "this court has consistently held that a state-created impediment to a direct appeal in state court does not invoke the limitations period of § 2244(d)(1)(B) because it is not an impediment to filing a federal habeas petition." *Id.* at *2 (citing *Winkfield*, 66 F.App'x at 582-83). The Sixth Circuit determined the petitioner did not invoke the limitations period under that subsection because "[a]lthough the alleged actions of his attorney and the state appellate court may have interfered with Oberacker's direct appeal in state court, Oberacker failed to demonstrate that these actions prevented him from filing his habeas corpus petition until over thirteen years after his conviction became final." *Id.*

The same is true here. While Mr. Brown has perhaps established ineffective assistance of counsel for failing to file a direct appeal in state court, he has neither established nor alleged facts

showing, his appellate counsel's ineffective assistance in the state appellate court prevented him from timely filing his habeas petition in this court.

As unpublished decisions, *Winkfield* and *Oberacker* are not binding precedent on the circuit's district courts. Therefore, some courts have taken a different approach, such as in *Waldron,* a case Mr. Brown would have this Court follow. In *Waldron,* the petitioner's court-appointed counsel filed a notice of appeal on September 14, 1998, four days after the deadline expired. 348 F.Supp.2d at 880. The state appellate court dismissed the appeal as untimely in January 1999. *Id.* Mr. Waldron claimed his appellate counsel did not notify him of the dismissal and he only learned of it when he asked a friend to contact the court of appeals. *Id.* He then sought assistance from the Office of the Ohio Public Defender. *Id.* On September 10, 2001, about three years after Mr. Waldron's appeal was dismissed as untimely, the Ohio Public Defender moved for leave to file a delayed appeal on his behalf. *Id.* When the court of appeals denied the motion and subsequent request for reconsideration, Mr. Waldon unsuccessfully appealed to the Supreme Court of Ohio. *Id.*

On federal habeas review, the district court found a causal relationship between appellate counsel's untimely direct appeal and Mr. Waldron being prevented from filing his federal habeas petition: (1) counsel was ineffective by failing to file a timely notice of appeal; (2) Mr. Waldron's delayed appeal was only necessary because of his appellate counsel's ineffective assistance; and (3) he could not have brought his habeas petition until the claim it contained had first been presented to and exhausted in state court, requiring the filing of a delayed appeal. *Id.* at 884. The court explained,

> the state-created impediment does not simply evaporate once Mr. Waldron's counsel failed to file a timely appeal; rather, its effects reverberate over time, forcing the filing

19

of a delayed appeal and necessarily delaying the filing of his habeas petition. To find Mr. Waldron's petition untimely because he did not more quickly overcome the state-created impediment would necessarily punish him for a constitutional violation by the State. Such a result is precisely what Section 2244(d)(1)(B) is designed to avoid by ensuring the state-created impediment does not prevent the timely filing of a habeas petition.

In applying Section 2244(d)(1)(B), the Court must therefore consider the impact Mr. Waldron's ineffective assistance of counsel had on his ability to file a timely petition and, if possible, identify the point in time that the state-created impediment was removed. In answer to these questions, in the context of Mr. Waldron's counsel's failure to timely file a notice of appeal, at least three conclusions could be reached. First, assuming that the only relevant consideration is whether Mr. Waldron's ineffective assistance of counsel ultimately prevented the filing of his petition at all— a nonsensical approach which would completely eviscerate Section 2244(d)(1)(B) rendering it all but inapplicable in every case, one could conclude that the interim impact and timing of the removal of the state-created impediment was of no consequence. Second, one could attempt to identify when Mr. Waldron should have discovered his counsel's failure to file a timely appeal and then taken action on his own, or with new counsel, to exhaust his state remedies and file a timely habeas petition. Finally, one could conclude that Mr. Waldron's counsel's constitutional ineffectiveness in failing to perfect a first appeal of right constituted a state-created impediment which cannot be rectified absent the allowance of such an appeal and that Mr. Waldron's habeas clock did not begin until the disposition of his motion for leave to file a delayed appeal.

*Id.* at 885 (footnote omitted).

The court selected the third approach. In doing so, the court determined the impediment to filing the federal habeas petition lifted when petitioner exhausted his claims in the state courts. *Id.* This approach of setting the impediment's removal date at the point of exhaustion of the claims would tend to create curious results. Under *Waldron*, Mr. Brown's federal habeas petition would be considered timely despite the passage of about 25 between his conviction and sentence to his motion for leave to file a delayed appeal.

But what kept Mr. Brown from filing his federal habeas petition fundamentally rests with his belief that his direct appeal remained pending for decades in the state courts. Other district

courts within the Sixth Circuit in similar situations have concluded, contrary to *Waldon*, that the impediment to filing—counsel's failure to file a direct appeal—is removed when the petitioner discovers that counsel was not representing his interests as he believed. *See Snead v. Warden, Madison Corr. Inst.*, No. 1:11-cv-127, 2011 WL 6817872, *7 (S.D. Ohio Dec. 28, 2011) (impediment to filing "was removed when petitioner discovered counsel was not representing his interests as he had originally been led to believe"); *see also Washington v. Warden, Lebanon Corr. Inst.*, No. 1:11-cv-269, 2012 WL 469812, at *4 (S.D. Ohio Feb. 13, 2012) (when appellate counsel failed to file an appeal on petitioner's behalf, impediment to filing was removed when petitioner claimed he "learned that he indeed could have filed an appeal").

Applied to the facts here, I must conclude Mr. Brown's petition remains untimely. According to Mr. Brown, he honestly believed his direct appeal remained pending with the Fifth District until he learned in September 2022 that no direct appeal was filed on his behalf. (ECF #10-1 at PageID 619). But his belief is belied by his unsworn declaration where in 1998, Mr. Brown "reached out to the legal community" for help with his case. (*Id.*). If he truly believed his direct appeal was pending at that time, it would make little sense for Mr. Brown to seek assistance from others. And in 1999, another attorney declined to represent him because there was no trial transcript available. (*Id.*). As the District Court noted previously, "[a]t a minimum, knowledge as early as 1999 of the lack of a trial transcript being available should have alerted [him] that an appeal had not been filed." (ECF #19 at PageID 723). Assuming Mr. Brown's unsworn assertions are correct, the impediment created by appellate counsel's failure to perfect a direct appeal was removed in 1998 when he began searching for other attorneys to represent him, or in 1999, when the lack of a trial transcript should have alerted him to the absence of a pending direct appeal.

21

Under this formulation, the one-year limitations period expired in 1999 or 2000. Thus, even with the benefit of a later start-date under § 2244(d)(1)(B), Mr. Brown's petition filed in 2023 remains untimely by over 20 years.

> **3.    Under 28 U.S.C. § 2244(d)(1)(D), the factual predicate for Mr. Brown's claims could have been discovered in 1999 through the exercise of due diligence so the one-year limitation period lapsed in 2000**

Last, Mr. Brown claims he is entitled to a later start date under § 2244(d)(1)(D). (ECF #10 at PageID 612). Under that subsection, a habeas petition may be filed within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Mr. Brown states the factual predicate for his ineffective assistance of counsel claim—his counsel's failure to file a direct appeal—was not discovered until September 2022, when his prison case manager looked at the docket. (*Id.* at PageID 617). But it is not the date on which the factual predicate *is* discovered that sets the later start date under § 2244(d)(1)(D); instead, it is the date on which the factual predicate *could have been* discovered through the exercise of due diligence.

At the earliest, Mr. Brown could have discovered that no appeal was filed on the date when time for filing expired. But citing the realities of the prison system, the Sixth Circuit has held that it would be an unreasonable burden to require a prisoner to track his counsel's pursuit of an appeal on the very day on which his conviction becomes final absent an appeal. *Granger v. Hurt*, 90 F.App'x 97, 100 (6th Cir. 2004) (holding two-month delay between expiration of time to file appeal and discovery of counsel's failure to file appeal was not so unreasonable as to constitute a lack of due diligence).

As noted above, Mr. Brown admits he learned that the transcript from the second trial was unavailable as early as 1999. At that point, he should have known an appeal had not been filed, or at least suspected as much and investigated further. As noted earlier, even with the benefit of a start-date in 1999, Mr. Brown's petition, filed in 2023, is well over 20 years late. Under these extreme circumstances, I conclude application of § 2244(d)(1)(D) is not appropriate.

### 4. Statutory and Equitable Tolling

Finally, I consider whether Mr. Brown is entitled to statutory or equitable tolling. I conclude he is not entitled to either form.

*Statutory Tolling.* Described above, statutory tolling pauses the limitations period during the pendency of a properly filed petition for post-conviction relief or other collateral review. Mr. Brown does not benefit from statutory tolling because the tolling provision only pauses an unexpired limitations period. *Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir. 2004); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (holding statutory tolling provision does not revive an expired limitations period; "it can only pause a clock that has not fully run"). Once the limitations period expires, state post-conviction-review proceedings no longer avoid applying a statute of limitations. *Vroman,* 346 F.3d at 602.

Mr. Brown filed a motion for resentencing in the trial court on September 13, 2019, long after (i) direct review under § 2244(d)(1)(A), (ii) the impediment to filing was removed under § 2244(d)(1)(B), and (iii) he could have discovered the factual predicate of his claims. (ECF #8-1 at PageID 335). The trial court determined the motion was a petition for post-conviction relief and denied it as untimely. (*Id.* at PageID 384). Because the limitations period (whether under

§§ 2244(d)(1)(A), (B), or (D)) expired long before Mr. Brown pursued the challenge to his sentence, his post-conviction petition does not toll the limitations period.

   *Equitable Tolling.* Equitable tolling requires the petitioner to demonstrate that (1) he diligently pursued his rights; and (2) some extraordinary circumstance prevented him from timely filing his habeas petition. *Holland,* 560 U.S. at 649. It is granted sparingly. *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 462 (6th Cir. 2012). Ineffective assistance of counsel can constitute an extraordinary circumstance warranting relief, *Cantrell v. Knoxville Cmty. Dev. Corp.,* 60 F.3d 1177, 1180 (6th Cir. 1995), but the statute of limitations may only be tolled where the circumstances are both beyond the petitioner's control and unavoidable even with due diligence. *Keeling,* 673 F.3d at 462. A petitioner need not exercise maximum feasible diligence, but reasonable diligence is necessary. *Holland,* 560 U.S. at 653.

   Mr. Brown is not entitled to equitable tolling because he did not pursue his rights diligently. He did not request assistance from the trial court or the Fifth District to determine the status of his appeal before or after the appellate deadline expired or, given Attorney Asper's alleged failure to communicate, request the appointment of new counsel. By Mr. Brown's own admission, as early as 1999 he knew a trial transcript was unavailable when his family tried to obtain different appellate counsel, a fact that should have alerted him an appeal had not been filed. Armed with this knowledge, Mr. Brown could have pursued a delayed appeal then, but instead he waited over two decades to do so. Sitting on his rights for more than 20 years substantially exceeds what the Sixth Circuit has found excessive and inappropriate for the application of equitable tolling. *See Robinson v. Easterling,* 424 F.App'x 439, 443 (6th Cir. 2011) (denying equitable tolling where petitioner sat on his rights for a year and a half).

I thus recommend the District Court **DISMISS** Grounds One, Two, Four, and Five as untimely under 28 U.S.C. § 2244(d).

**B.      Ground Three is not cognizable on federal habeas review**

In his last remaining ground for relief, Mr. Brown claims he was denied his Sixth and Fourteenth Amendment due process right to a fair and adequate delayed appeal review when the court of appeals "failed to determine whether his ineffective assistance of appellate counsel claim could provide adequate cause for failing to timely file a notice of appeal." (ECF #1 at PageID 7). The State counters that alleged errors of state law in post-conviction proceedings are not cognizable on federal habeas review. (ECF #8 at PageID 35).

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws, or treatises of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A court may not issue the writ "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quotation omitted). Claims alleging an error of state law are not cognizable in federal habeas proceedings "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Christine v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

Mr. Brown's claim the Fifth District improperly denied his motion for delayed appeal under Ohio Appellate Rule 5(A) does not dispute the fact or duration of his detention. Rather,

the claim addresses a collateral matter. *See Kelly v. Brunsman,* 625 F.Supp.2d 586, 598-99 (S.D. Ohio June 9, 2009). Claims addressing collateral matters unrelated to the underlying conviction are not cognizable on federal habeas review. *See Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007); *Kirby v. Dutton,* 794 F.2d 245, 246-47 (6th Cir. 1986). As the Sixth Circuit stated in *Cress:*

> The Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration."

484 F.3d at 853 (citations omitted).

Habeas courts often reject similar claims challenging the denial of delayed appeal motions under Ohio Appellate Rule 5(A) on the ground that such claims address a collateral matter unrelated to the petitioner's detention. *See, e.g., Korbel v. Jeffreys,* No. 2:06-cv-625, 2007 WL 3146248, at *3 (S.D. Ohio Oct. 24, 2007), *report and recommendation adopted,* 2008 WL 207932 (S.D. Ohio Jan. 24, 2008); *Godinez v. Erdos,* No. 3:15 CV 00016, 2016 WL 11384505, at *9 (N.D. Ohio July 18, 2016) (collecting cases), *report and recommendation adopted,* 2016 WL 4745823 (N.D. Ohio Sept. 13, 2016). In an unpublished decision, the Sixth Circuit rejected a petitioner's contention that denial of a motion for delayed appeal violates his right to due process where the

petitioner complied with Appellate Rule 5(A), noting the decision to grant or deny such a motion is within the discretion of Ohio's appellate courts. *Granger v. Hurt,* 215 F.App'x 485, 494-95 (6th Cir. 2007). Thus, to the extent that Mr. Brown challenges the correctness of the Fifth District's decision to deny his motion for leave to file a delayed appeal under Appellate Rule 5(A), he alleges an error under state law that is not cognizable here.

Next, Mr. Brown argues the Fifth District's decision violates due process because the trial court and his appellate counsel did not inform him of his appellate rights or his ability to file a delayed appeal pro se. (ECF #10 at PageID 594). The Sixth Circuit has held that "the Constitution is violated if a convicted defendant is denied an appeal 'by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel.'" *Jacobs v. Mohr,* 265 F.3d 407, 419 (6th Cir. 2001) (quoting *Goodwin v. Cardwell,* 432 F.2d 521, 522-23 (6th Cir. 1970)); *see also Wolfe v. Randle,* 267 F.Supp.2d 743, 746-48 (S.D. Ohio 2003) ("[D]ue process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights."). To be properly informed of his appellate rights, a defendant must be told of his right to appeal, the procedures and time limits involved, and the right to have help from appointed counsel for that appeal. *Wolfe,* 267 F.Supp.2d at 748; *Norris v. Wainwright,* 588 F.2d 130, 135 (5th Cir. 1979); *Keys v. United States,* 545 F.3d 644, 648 (8th Cir. 2008).

In the context of a motion for delayed appeal, due process is implicated only "when the delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected. *Wolfe,* 267 F.Supp.2d at 747. The defendant bears the burden of showing by a preponderance of the evidence that he was not advised of his rights. *Faught v. Cowan,* 507 F.2d 273, 275 (6th Cir. 1974), *cert. denied,* 421 U.S. 919 (1975). If the defendant had personal

knowledge of his appellate rights, he "cannot base a claim on the court's failure to inform him of his appellate rights." *Wolfe*, 267 F.Supp.2d at 747 (citing *Peguero v. United States*, 526 U.S. 23, 24 (1999) (holding, in the context of a habeas petition for federal prisoners under 28 U.S.C. § 2255, that a district court's failure to advise the defendant of his right to appeal does not entitle him to habeas relief if he knew of his right and thus suffered no prejudice from the omission)). Where a defendant has exercised his right to appeal in prior criminal cases, he cannot claim ignorance of his appellate rights in later cases. *See, e.g.*, *Jackson v. Sloan*, No. 1:13 CV 1326, 2014 WL 4472623, at *15 (N.D. Ohio Sept. 10, 2014).

The record on appeal does not support Mr. Brown's claim that he was not informed of his right to appeal. First, the docket makes clear the trial court notified Mr. Brown of his right to appeal at the first and second sentencing hearings. (ECF #8-1 at PageID 557; *Id.* at PageID 561; *see also id.* at PageID 61). Moreover, Mr. Brown successfully exercised his right to appeal with counsel after the first trial, resulting in reversal and remand for a second trial. (*Id.* at PageID 558; *see also State v. Booker*, No. 1996CA00319, 1997 WL 220299 (Ohio Ct. App. Mar. 24, 1997)). Because Mr. Brown has not shown by a preponderance of the evidence that the trial court failed to inform him of his right to appeal, due process is not implicated. Thus, his state-law claim that the court of appeals erred by denying his motion for leave to file a delayed appeal under Ohio Appellate Rule 5(A) is not cognizable on federal habeas review. I recommend the District Court **DISMISS** the claim as such.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised

on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. at 337.

Mr. Brown has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are untimely or valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Brown a COA as to all grounds of his petition.

### CONCLUSION AND RECOMMENDATION

For all these reasons, I recommend the District Court **DISMISS** the petition because Grounds One, Two, Four, and Five are untimely and Ground Three is not cognizable on federal habeas review. Finally, I recommend the District Court **DENY** a certificate of appealability.

Dated: March 6, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).