## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Ernest A. Booker-Brown,** | **Case No. 5:23-cv-01349-PAB** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **Warden David W. Gray,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Petitioner Ernest A. Booker-Brown's ("Petitioner") "Motion for Relief from Judgment, Pursuant to Civ.R. 60(B)(3) & (6), of the April 22, 2025 Opinion & Order Accepting the Report and Recommendation of Magistrate Judge Darrell A. Clay, and Finding that Petitioner Failed to File an Objection to the Report and Recommendation" (the "Rule 60(b) Motion"). (Doc. No. 25.) Respondent Warden David W. Gray ("Respondent") did not file an opposition to the Rule 60(b) Motion. Also pending before the Court is Petitioner's "Motion for Leave to Expand the Record, or in the Alternative, Motion for an Order Directing the Ohio Attorney General to Supplement the Habeas Record with Any/All Journal Entries from the Stark County Common Pleas Court Ordering the Appointment of Appellate Counsel on Direct Appeal Including any Orders Directing the Clerk to Notify the Appointed Counsel of the Appointment" (the "Motion to Expand the Record"). (Doc. No. 26.) Respondent filed an Opposition to the Motion to Expand the Record on August 5, 2025. (Doc. No. 27.) Petitioner did not file a reply.

For the following reasons, the Court hereby DENIES Petitioner's Rule 60(b) Motion and DENIES the Motion to Expand the Record. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no

basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

## I.      Background and Procedural History

This is a habeas case brought under 28 U.S.C. § 2254.  The background and procedural history are recited in this Court's September 13, 2024 Memorandum Opinion & Order.  (Doc. No. 19.) Relevant to Petitioner's pending motions, on March 6, 2025, the Magistrate Judge issued a Report and Recommendation (the "R&R") recommending that the Court dismiss the Petition.  (Doc. No. 20.)  The Magistrate Judge found that Grounds One, Two, Four, and Five are untimely and that Ground Three is not cognizable on Federal habeas review.  (*Id.* at PageID #755.)

On March 21, 2025, Petitioner filed a Motion for Extension of Time to file his Objection to the R&R.  (Doc. No. 21.)  On March 24, 2025, the Court issued an order granting the Motion for Extension of Time and granting Petitioner until April 14, 2025 to file his Objection.

On April 22, 2025, this Court issued a Memorandum Opinion and Order accepting the R&R and declined to issue a certificate of appealability.  (Doc. No. 22.)  As noted in that Memorandum Opinion and Order, as of April 22, 2025, no objections to the R&R had been filed.  (*See id.*)  For the reasons stated in Memorandum Opinion and Order, the Court entered a Judgment Entry dismissing the Petition.  (Doc. No. 23.)

On April 29, 2025, the Clerk docketed Petitioner's "Objection to the Magistrate's March 6, 2025 Report and Recommendation" (the "Objection").  (Doc. No. 24.)  Therein, Petitioner represents that "a true copy of the foregoing Objection was given to the Belmont Correctional Institution Mail Room to be delivered to the Clerk of Court . . . on April 13, 2025."  (*Id.* at PageID #801.)

On May 19, 2025, Petitioner filed the Rule 60(b) Motion seeking relief from the Court's Judgment Entry.  (Doc. No. 25.)  Attached to the Rule 60(b) motion is an unsigned declaration.  (*Id.*

at PageID #807.)  Therein, Petitioner avers that on April 13, 2025 he gave the envelope containing his Objection to the "Belmont mail room" and that on April 17, 2025 "the Belmont Institutional Cashier's Office/Mail room processed the Envelope containing the objection."  (*Id.*)  He also avers that "[t]here is case history showing the Belmont Correction Institution has ongoing issues with timely mail service."  (*Id.*)  Petitioner also attached a "Personal A/C Withdrawal Check Out-Slip," which appears to show that that mailroom approved his request to mail his Objection on April 17, 2025.  (Doc. No. 25-1, PageID #849.)  Petitioner also attached a copy of his Objection that was docketed on April 29, 2025.  (Doc. No. 25, PageID #809–847.)  Respondent did not file an opposition to the Rule 60(b) Motion.

Then, on July 22, 2025, Petitioner filed the Motion to Expand the Record.  (Doc. No. 26.) Respondent filed an Opposition on August 5, 2025 (Doc. No. 27.)  Petitioner did not file a Reply.

Accordingly, Petitioner's Rule 60(b) Motion and the Motion to Expand the Record are ripe for the Court's review.

## II.  The Court denies Petitioner's Rule 60(b) Motion

Petitioner's Motion for Relief from Judgment in premised upon Fed. R. Civ. P. 60(b)(3) and (6).  Those rules provide in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; [or]
>
> * * *
>
> (6) any other reason that justifies relief.

### A.  The Court finds that Petitioner is not entitled to relief under Rule 60(b)(3)

To prevail on a Rule 60(b)(3) motion, the movant must "show by clear and convincing

3

evidence that [the non-moving party] deliberately engaged in some act of fraud, misrepresentation or other misconduct that adversely affected the fairness of the proceedings." *Thurmond v. Wayne County Sheriff Dep't*, 564 F. App'x 823, 827 (6th Cir. 2014) (citing *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 455 (6th Cir. 2008)).  Here, Petitioner has not met his burden. Petitioner has not argued that Respondent deliberately interfered with the timely mailing of his Objection.  Even if he had, the evidence attached to his Motion would not support such an argument. Viewing the evidence in the light most favorable to Petitioner, the evidence shows that it took the mail room four days to mail his Objection, and that it took another twelve days for the Objection to reach the Court and be docketed.  The evidence does not, by clear and convincing evidence, show that Respondent "deliberately engaged in some act of fraud, misrepresentation or other misconduct that adversely affected the fairness of the proceedings."  Accordingly, the Court finds that Petitioner is not entitled to relief under Rule 60(b)(3).

> **B.** **Although the Court concludes that Petitioner has demonstrated "mistake, inadvertence, surprise, or excusable neglect" so as to warrant evaluation of Petitioner's Objection, nonetheless, the Court finds that Petitioner is not entitled to relief under Rule 60(b)(1) or (6)[1]**

Rule 60(b)(1) allows a district court to grant relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect."  Here, the Court finds that Petitioner's Motion demonstrates "mistake, inadvertence, surprise, or excusable neglect."  His deadline to file an objection was April 14, 2025.  A day earlier, he timely presented the Objection to the mail room.  By operation of the prison mailbox rule, Petitioner's Objection was timely filed on April 13, 2025.

---

[1] Rule 60(b)(6) "is a catchall provision that provides for relief from a final judgment for any reason justifying relief not captured in the other provisions of Rule 60(b)." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) (citing *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013)).  While Petitioner moved for relief under the Rule 60(b)(6), based on the evidence submitted within his Rule 60(b) Motion, the Court finds that the relief Petitioner seeks falls within Rule 60(b)(1), and accordingly, construes the Rule 60(b) Motion as requesting relief under Rule 60(b)(1).

*Houston v. Lack*, 487 U.S. 266, 276–77 (1988); *Enger v. Foley*, No. 1:22-CV-01066, 2025 U.S. Dist. LEXIS 187414, at *17 (N.D. Ohio Sept. 24, 2025); *Welch v. Lazaroff*, No. 1:14CV2328, 2016 U.S. Dist. LEXIS 53568, at *1–2 (N.D. Ohio Apr. 21, 2016).

While Petitioner established "mistake, inadvertence, surprise, or excusable neglect," that does not mean he is entitled to relief from the judgment.  To prevail on a Rule 60(b)(1) motion, the movant must also demonstrate "a meritorious claim or defense."  *Merriweather v. Wilkinson*, 83 F. App'x 62, 63 (6th Cir. 2003) (citing *Marhsall v. Monroe & Sons, Inc.*, 615 F.2d 1156, 1160 (6th Cir. 1980)); *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003); *Ajna El v Cbe Grp., Inc.*, No. 1:22-CV-869, 2023 U.S. Dist. LEXIS 124694, at *2 (N.D. Ohio July 19, 2023).[2]  Accordingly, the Court will analyze whether Petitioner's objection establishes a meritorious claim or defense.  As explained below, Petitioner's Objection does not establish a meritorious claim or defense, and thus, the Court finds that Petitioner is not entitled to relief under either Rule 60(b)(1) or (6).

### 1.    A district judge reviews an objection to a magistrate judge's resolution of a dispositive matter *de novo*

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. 28 U.S.C. § 636.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.  *Id*.  "A party

---

[2] The same rule applies to Rule 60(b)(6) motions.  *See Buck v Davis*, 580 U.S. 100, 126 (2017);  *United States v. D1*, No. 06-cr-20185-1, 2025 U.S. Dist. LEXIS 136607, at *19 (E.D. Mich. July 17, 2025); *Johnson v. Fitz*, No. 2:15-cv-02745-MSN-tmp, 2025 U.S. Dist. LEXIS 109792, at *11 (June 10, 2025); *Brown v. Total Quality Logistics, LLC*, No. 1:19-cv-574, 2021 U.S. Dist. LEXIS 152972, at *2–4 (S.D. Ohio Aug. 13, 2021).  Accordingly, even if the Court construed Petitioner's Rule 60(b) Motion as seeking relief under Rule 60(b)(6), Petitioner would still need to establish a meritorious claim or defense to be entitled to relief.

who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, No. 3:04CV7584, 2006 U.S. Dist. LEXIS 97510, at *7 (N.D. Ohio April 7, 2006) (quoting *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).  When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b)(3), Advisory Committee Notes; *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").

## 2.    The Court overrules Petitioner's first objection

Petitioner's first objection is that "the Magistrate Judge abused its discretion and erred as a matter of law where it failed to address Petitioner's abandonment of counsel claim which Petitioner used to support equitable tolling argument."  (Doc. No. 24, PageID #767.)  Petitioner argues that "his four (4) appointed appellate attorney's abandonment of him constituted an extraordinary circumstance entitling him to equitable tolling of the limitations period" and that the Magistrate Judge "failed to address the argument."  (*Id.*)

The Court disagrees.  In the R&R, the Magistrate Judge considered Petitioner's argument:

Mr. Brown's arguments for a later start date under §§ 2244(d)(1)(B) and (D) and for equitable tolling rest on the same set of assertions. At the sentencing hearing on June 9, 1997, the trial court informed Mr. Brown of his appellate rights and appointed [1] John Mackey to represent him on appeal. (ECF #8-1 at PageID 321, 561). Mr. Mackey moved to withdraw as counsel on June 27, 1997. (*Id.* at PageID 561). The trial court appointed [2] Anthony Kaplanis on July 2, 1997, and [3]

6

Michael Boske on July 8, 1997. (*Id*.). On July 9, 1997, the trial court appointed [4] Edward Asper. (*Id*.).

\* \* \*

Mr. Brown claims he tried to contact Mr. Asper but did not succeed. (ECF #1 at PageID 11). He also claims he sought assistance from other attorneys when he could not reach Mr. Asper, but they declined to represent him because he already had counsel of record. (ECF #1 at PageID 12).

\* \* \*

Accepting these allegations as true, it appears Mr. Brown tried to seek help from outside sources (see ECF #10-1 at PageID 619) but did not inform the trial court or appellate court that appellate counsel had, in effect, abandoned him at a stage when he was entitled to counsel. Mr. Brown, citing the order appointing Attorney Asper, claims the trial court is to blame for this. In his declaration, Mr. Brown claims the court's order left him fearful to inform the court that Attorney Asper had not communicated with him because he thought doing so would waive his right to the assistance of counsel. (*Id*. at PageID 620).

(Doc. No. 20, PageID #735–37.)  After considering these arguments, the Magistrate Judge concluded that Petitioner was not entitled to equitable tolling:

Mr. Brown is not entitled to equitable tolling because he did not pursue his rights diligently. He did not request assistance from the trial court or the Fifth District to determine the status of his appeal before or after the appellate deadline expired or, given Attorney Asper's alleged failure to communicate, request the appointment of new counsel. By Mr. Brown's own admission, as early as 1999 he knew a trial transcript was unavailable when his family tried to obtain different appellate counsel, a fact that should have alerted him an appeal had not been filed. Armed with this knowledge, Mr. Brown could have pursued a delayed appeal then, but instead he waited over two decades to do so. Sitting on his rights for more than 20 years substantially exceeds what the Sixth Circuit has found excessive and inappropriate for the application of equitable tolling. *See Robinson v. Easterling*, 424 F.App'x 439, 443 (6th Cir. 2011) (denying equitable tolling where petitioner sat on his rights for a year and a half).

(*Id.* at PageID #750.)

The Court agrees with the Magistrate Judge's conclusion.  To be entitled to equitable tolling:

a habeas petitioner must establish that (1) he has been pursuing his rights diligently;

7

and (2) some extraordinary circumstance stood in his way and prevented timely filing. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." The Sixth Circuit has held that excessive delays in filing lack appropriate diligence. "Absent compelling equitable considerations, a court should not extend limitations by even a single day."

*Booker-Brown v. Gray*, No. 5:23-cv-01349-PAB, 2024 U.S. Dist. LEXIS 164875, at *11–12 (N.D. Ohio Sept. 13, 2024) (Barker, J.) (internal citations omitted).

The finds that Petitioner did not pursue his rights diligently. The records shows that Petitioner was aware of his appellate rights in June 1997. The June 9, 1997 sentencing journal entry provides that "the Court explained to the defendant his rights to appeal according to Criminal Rule 32." (Doc. No. 8–1, PageID #321.) Then, on July 9, 1997, the trial court issued another judgment entry that would have alerted Petitioner of his appellate rights:

> The Court herein appoints Attorney Edward Asper . . . as appellate counsel in the above-captioner matter. The Courts finds that previous counsel, Mr. Mackey withdrew, in that the Defendant indicated to Mr. Mackey that he did not have confidence in Mr. Mackey handling the appeal in his matter. The Court further finds that Mr. Booker has continuously throughout the course of his proceedings, attempted to manipulate the Court system by firing various appoint counsel who have represented him at various stages of the proceedings. The Court finds that: counsel have adequately and competently represented Mr. Booker and the Court would note for the file that the court will not appoint further appellate counsel in this matter. Should Mr. Booker not wish the services of Attorney Asper, he may retain private counsel to represent him pursuant to any order of the Fifth District Court of Appeals or he may represent himself without the benefit of legal counsel.

(Doc. No. 10-2, PageID #623–24.) A copy of this order was sent Petitioner at the Southern Ohio Correctional Institution. (*Id.*)

Petitioner took no steps to file an appeal once it became clear that his appointed counsel failed to file an appeal. Petitioner asserted in his Traverse that he "and his family tried numerous times to reach out to attorney Edward Asper, however, Asper never responded to attempted communications." (Doc. No. 10, PageID #587.) Then, in 1999, by his own admission, Petitioner became aware that the

transcript from his second trial was not available.  (*Id.* at PageID #589.)  This too would have alerted him that an appeal was never filed.  Further, Petitioner also admits that he reached out to various attorneys and legal groups seeking help with his case, which undermines any argument that he was not aware of his appointed counsel's failure to appeal.  (*Id.* at PageID #588.)  Despite being aware of his appellate rights, it was not until October 18, 2022, over twenty-years later, that Petitioner filed his Motion for Leave to File Delayed Appeal.  (Doc. No. 8-1, PageID #487.)

Accordingly, the Court agrees with the Magistrate Judge that Petitioner is not entitled to equitable tolling.  *See Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011) (denying equitable tolling where petitioner sat on his rights for a year and a half).  Petitioner's first objection is overruled.

### 3.      The Court overrules Petitioner's second objection

Petitioner's second objection is that "the Magistrate abused its discretion and erred as a matter of law where it failed to address Petitioner's claims that he was denied the opportunity to file a delayed appeal where the trial court and the appointed appellate counsel failed to inform him of the right to file delayed appeal."  (Doc. No. 24, PageID #768.)  Petitioner argues that he "raised the claim that he was denied the opportunity to file a delayed appeal because the trial court and his appellate counsel failed to inform him of this right" and that "nowhere in the report and recommendation does the Magistrate address the argument."  (*Id.* at PageID #769.)

The Court disagrees.  The Magistrate Judge expressly considered Petitioner's argument:

Next, Mr. Brown argues the Fifth District's decision violates due process because the trial court and his appellate counsel did not inform him of his appellate rights or his ability to file a delayed appeal pro se. (ECF #10 at PageID 594).

* * *

9

The record on appeal does not support Mr. Brown's claim that he was not informed of his right to appeal. First, the docket makes clear the trial court notified Mr. Brown of his right to appeal at the first and second sentencing hearings. (ECF #8-1 at PageID 557; *Id*. at PageID 561; *see also id*. at PageID 61). Moreover, Mr. Brown successfully exercised his right to appeal with counsel after the first trial, resulting in reversal and remand for a second trial. (Id. at PageID 558; *see also State v. Booker*, No. 1996CA00319, 1997 WL 220299 (Ohio Ct. App. Mar. 24, 1997)). Because Mr. Brown has not shown by a preponderance of the evidence that the trial court failed to inform him of his right to appeal, due process is not implicated. Thus, his state-law claim that the court of appeals erred by denying his motion for leave to file a delayed appeal under Ohio Appellate Rule 5(A) is not cognizable on federal habeas review. I recommend the District Court DISMISS the claim as such.

(Doc. No. 20, PageID #753–54.)

Upon review, the Court finds that the Magistrate Judge's conclusion is correct. The Court has not identified any authority holding that the Constitution mandates that a defendant be informed of the ability to file a delayed appeal under Ohio R. App. P. 5(A). *Cf. Bullock v. Stuff*, No. 5:24-CV-01379-BMB, 2025 U.S. Dist. LEXIS 200060, at *29–30 (N.D. Ohio Oct. 9, 2025) ("Mr. Bullock has not identified clearly established law from the Supreme Court that holds a state court must, as a matter of federal due process or equal protection, inform a defendant that he has a limited right to appeal after entering a guilty plea and receiving a jointly recommended sentence"); *Caraballo v. Bracy*, No. 1:16-CV-2024, 2018 U.S. Dist. LEXIS 128019, at *11–12 (N.D. Ohio July 12, 2018) (observing that "the Supreme Court has not specifically ruled on whether a defendant who only has a limited right of appeal is entitled to notice of that right"). Indeed, "[t]he decision to grant or deny a motion for leave to file a delayed appeal is within the discretion of the Ohio Court of Appeals, and the denial of leave to file is not in itself a violation of due process." *Duett v. Forshey*, No 20-4262, 2021 U.S. App. LEXIS 12070, at *4 (6th Cir. Apr. 22, 2021) (citing *Granger v. Hurt*, 215 F. App'x 485, 495 (6th Cir. 2007)). But due process rights are implicated "when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected." *Kelley v. Brunsman*,

10

625 F.Supp.2d 586, 599–600 (S.D. Ohio 2009) (quoting *Wolfe v. Randle*, 267 F.Supp.2d 743, 747 (S.D. Ohio 2003)).

Accordingly, Petitioner could be successful if his delayed appeal was the result of the trial court's failure to ensure that his appellate rights were protected.  Under Sixth Circuit law, "a constitutional violation results when a criminal defendant is denied the right to an appeal because he lacked knowledge of that right."  *Hall v. Yanai*, 197 F. App'x 459, 460 (6th Cir. 2006) (citing *Goodwin v. Cardwell*, 432 F.2d 521, 522–23 (6th Cir. 1970)); *see also Jacobs v. Mohr*, 265 F.3d 407, 419 (6th Cir. 2001) ("this Court held [in *Goodwin*] that the Constitution is violated if a convicted defendant is denied an appeal 'by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel'").

Here, as explained above, the fact that the trial court twice advised Petitioner of his right to appeal is reflected in two separate journal entries.  (Doc. No. 8–1, PageID #321; Doc. No. 10-2, PageID #623–24.)  Indeed, Petitioner admits in his Petition that "the trial court asked [him] on the record if he wished to appeal" and he "invoked his right to appeal by verbally informing the trial court that he did."  (Doc. No. 1, PageID #11.)  Accordingly, the record reflects that Petitioner was advised of his right to appeal, and therefore was not "denied the right to an appeal because he lacked knowledge of that right."  *Hall*, 197 F. App'x at 460.  The Court therefore overrules Petitioner's second objection.

### 4.    The Court overrules Petitioner's third objection

Petitioner's next objection is the "the Magistrate's refusal to recognize and apply controlling-binding circuit district precedent, set forth in *Waldron v. Jackson*, 348 F. Supp.[2]d 877, 884 (N.D. Ohio Oct. 15, 2004), as it relates to the determination of whether appellate counsel's ineffective

11

assistance prevent petitioner from timely filing a federal habeas petition", which, according to Petitioner, "is based on a clear error of law and produced manifest injustice." (Doc. No. 24, PageID #769.) Petitioner argues that the Magistrate Judge "refus[ed] to recognize and apply circuit district precedent" by not following *Waldron*. (*Id.* at PageID #770.) He further asserts "that the Magistrate's refusal to recognize and apply the Southern (sic) District's controlling precedent" in *Waldron* "is a violation of the Stare Decisis Doctrine or at least contrary to clearly established Southern (sic) District law." (*Id.* at PageID #772.)

Under *stare decisis*, "a *lower* court must strictly obey and apply the decisions of a *higher* court in the lower court's jurisdiction." *Sutton v. CHSPSC, LLC*, No. 1:16-cv-01318-STA-egb, 2018 U.S. Dist. LEXIS 111601, at *16 (W.D. Tenn. July 5, 2018) (emphasis added). By contrast, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Wolek v. N. Ohio Surgery Ctr., LLC*, No. 1:25-cv-00248-PAB, 2025 U.S. Dist. LEXIS 232331, at *12–13 (N.D. Ohio Nov. 26, 2025) (Barker, J.) (citation omitted).

> There is no such thing as "the law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates*, 542 F. Supp. 807, 816 (N.D. Ga. 1982). Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

*Finnell v. Schweitzer*, No. 1:17-cv-268, 2023 U.S. Dist. LEXIS 105218, at *4–5 (S.D. Ohio June 15, 2023) (quoting *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991)).

Although *Waldron* is a decision from this district, *stare decisis* does not make that decision binding. Upon review of *Waldron*, the Court finds that Magistrate Judge correctly distinguished

*Waldron*. In *Waldron*, the petitioner's counsel filed an appeal four-days late, which the court of appeals *sua sponte* dismissed. 348 F.Supp.2d at 880. The petitioner's counsel failed to inform the petitioner of the dismissal. *Id.* Three years later, after the petitioner eventually learned that the appeal had been dismissed, the petitioner filed a motion for leave to file a delayed appeal, which was denied, and the Ohio Supreme Court refused to hear a further appeal. *Id.* A few months later, and less than four-years from his conviction, the petitioner filed his habeas petition. *Id.*

The *Waldron* court held that the petition was timely under 28 U.S.C. § 2244(d)(1)(A):

Accordingly, the state-created impediment does not simply evaporate once Mr. Waldron's counsel failed to file a timely appeal; rather, its effects reverberate over time, forcing the filing of a delayed appeal and necessarily delaying the filing of his habeas petition. To find Mr. Waldron's petition untimely because he did not more quickly overcome the state-created impediment would necessarily punish him for a constitutional violation by the State. Such a result is precisely what Section 2244(d)(1)(B) is designed to avoid by ensuring that a state-created impediment does not prevent the timely filing of a habeas petition.

In applying Section 2244(d)(1)(B), the Court must therefore consider the impact Mr. Waldron's ineffective assistance of counsel had on his ability to file a timely petition and, if possible, identify the point in time that the state-created impediment was removed. In answer to these questions, in the context of Mr. Waldron's counsel's failure to timely file a notice of appeal, at least three conclusions could be reached. First, assuming that the only relevant consideration is whether Mr. Waldron's ineffective assistance of counsel ultimately prevented the filing of his petition at all -- a nonsensical approach which would completely eviscerate Section 2244(d)(1)(B) rendering it all but inapplicable in every case, one could conclude that the interim impact and timing of the removal of the state-created impediment was of no consequence. Second, one could attempt to identify when Mr. Waldron should have discovered his counsel's failure to file a timely appeal and then taken action on his own, or with new counsel, to exhaust his state remedies and file a timely habeas petition. Finally, one could conclude that Mr. Waldron's counsel's constitutional ineffectiveness in failing to perfect a first appeal of right constituted a state-created impediment which cannot be rectified absent the allowance of such an appeal and that Mr. Waldron's habeas clock did not begin until the disposition of his motion for leave to file a delayed appeal.

Although the Sixth Circuit's unreported decision in <u>Winkfield</u> appears somewhat inconsistent with the latter approach, this Court finds that alternative most

consistent with the purpose of Section 2244(d)(1)(B) and most appropriate because of its clarity and its likelihood to protect a defendant's ability to appeal and to preserve his constitutional right to effective assistance of counsel. Given that the State created the constitutional impediment to the perfection of Mr. Waldron's appeal, it should not benefit from the subsequent delay created by that violation. Because the petitioner's state claims remain unexhausted until he or she files a motion for a delayed appeal, his ineffective assistance of counsel in filing a timely appeal continues to prevent his filing of a federal habeas petition until the resolution of his delayed appeal. Once the petitioner's delayed appeal has been finally ruled on by the state courts and the ninety day period for filing certiorari with the United States Supreme Court has expired, his or her habeas limitations' period begins to run.

*Id.* at 885–86.

Courts, however, have reached contrary conclusions, and found that when counsel fails to file a direct appeal, the state created impediment is removed when the petitioner learns of this fact. *Sayles v. Warden*, No. 1:11-cv-524, 2012 U.S. Dist. LEXIS 115113, at *18 (S.D. Ohio July 16, 2012) ("the impediment to filing was removed at the latest on June 19, 2009, the outside date provided by petitioner for when he discovered that no appeal had been filed by counsel as he had been led to believe"); *Washington v. Warden, Lebanon Corr. Inst.*, No. 1:111-cv-269, 2012 U.S. Dist. LEXIS 17704, at *13–14 (S.D. Ohio Feb. 13, 2012) ("even assuming, as petitioner suggested in his motions for delayed appeal, that he did not know he could file a *pro se* appeal and that counsel led him to believe that he had no right to appeal his guilty-plea conviction or sentence, any such impediments to filing were removed at the latest on March 3, 2009, when petitioner claims he 'learned that he indeed could have filed an appeal.'"); *Snead v. Warden, Madison Corr. Inst.*, No. 1:11-cv-127, 2011 U.S. Dist. LEXIS 149091, at *21 (S.D. Ohio Dec. 27, 2011) (finding that "any such impediment to filing was removed in this case by the time petitioner discovered in October 2006 that his counsel was not representing his interests as he had originally been led to believe"); *Bates v. Moore*, No. 3:07CV025, 2007 U.S. Dist. LEXIS 101852, at *12–13 (S.D. Ohio Nov. 15, 2007) (distinguishing

14

*Waldron* and finding the petition untimely when "it is clear that he learned of his right to appeal when the trial court told him of that right in May of 2004" and the petitioner "waited until January of 2006 before he took any action despite the apparent conflict in what his trial lawyer is claimed to have told him and what the trial judge specifically told him.").  Indeed, the Sixth Circuit's unreported decision in *Miller v. Cason*, 49 F. App'x 495 (6th Cir. 2002) is at odds with *Waldron*:

> The limitations period likewise was not tolled by any state-created impediment. Miller alleged that the State of Michigan impeded the filing of his federal habeas corpus petition by failing to give him notice of his appeal rights at sentencing, by not timely appointing counsel to perfect a belated appeal, by delaying the preparation of the trial transcripts for an unspecified amount of time, and by not granting him due process during his direct appeal. Although these alleged actions may have interfered with Miller's direct appeal in state court in the early 1990s, Miller has failed to explain how the actions prevented him from filing his federal habeas corpus petition until 2001.

*Id.* at 497.

Applying this line of case law, the Magistrate Judge correctly concluded that the Petition was not timely under 28 U.S.C. § 2244(d)(1)(B).  Under that section, the one-year limitation period begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."  Upon review of the record, the Court finds that the state created impediment would have been removed in 1999, at the latest, when Petitioner would have become aware that a direct appeal was never filed.  Thus, the Petition, filed in 2023, is untimely under 28 U.S.C. § 2244(d)(1)(B).

Accordingly, Petitioner's third objection is overruled.

### 5. The Court overrules Petitioner's fourth objection

In his fourth objection, Petitioner asserts that "[t]he Magistrate abused its discretion and erred

15

as a matter of law where it failed to address Petitioner's claim that the trial court failed to make Petitioner aware of the dangers and disadvantages of pro se self-representation once advised of that right in determining equitable tolling, extraordinary circumstances, and state impediment."  (Doc. No. 24, PageID #773.)  He argues that while the state court informed him "that it would not appoint further appellate counsel should petitioner not want the service of attorney Asper, and that he may represent himself without the benefit of legal counsel," the state court "did not provide Petitioner with the notice of the dangers and disadvantages of pro se self-representation as required by law."  (*Id.* at PageID #774.)

The Court finds that the record does not support Petitioner's argument.  Petitioner is correct that if a defendant decides to waive his right to counsel "he should be made aware of the dangers and disadvantages of self-representation."  *United States v. Carmichael*, 676 F. App'x 402, 408 (6th Cir. 2017 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975) (holding that in order to waive the right to counsel, the defendant must do so "knowingly and intelligently")).  "*Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed *pro se*."  *United States v. Cromer*, 389 F.3d 662, 682–83 (6th Cir. 2004).

Here, the trial court gave Petitioner the option of relying on appointed counsel or proceeding *pro se*.  (Doc. No. 10-2, PageID #623–24.)  The Petition is premised upon his appointed counsel failing to file a direct appeal in 1997.  Since Petitioner was relying on his appointed counsel, logically, he was not proceeding *pro se*.  Upon careful review of the record, there is nothing to suggest that Petitioner clearly and unequivocally asserted his right to proceed *pro se*.  Thus, the state court was not required to warn him about the risks of proceeding *pro se*."  *See Cromer*, 389 F.3d at 682–83 ("Because there was no waiver, clearly and unequivocally asserted, there was no need to warn Cromer

16

about the consequences of that waiver"); *see also Childress v. Booker*, No. 14-1676, 2015 U.S. App. LEXIS 11015, at *3 (6th Cir. June 15, 2015) (rejecting petitioner's argument that the trial court failed to warn him when he never waived his right to counsel).

Petitioner's fourth objection is overruled.

### 6.    The Court overrules Petitioner's fifth objection

Petitioner's fifth Objection is to "the Magistrate's Findings of Fact and Conclusions of Law regarding the determination of the limitations period start-date under" 28 U.S.C. § 2244(d)(1).  (Doc. No. 24, PageID #775.)

Under Section 2244(d)(1), the statute of limitations period runs from the latest of four dates:

(A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under Section 2244(d)(1)(A), the Petitioner's conviction became final when his counsel failed to file the appeal in 1997.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("We thus agree with the Court of Appeals that because Gonzalez did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"). The Court has already determined that the Petition is untimely under Section 2244(d)(1)(B).  And Petitioner does not assert that his Petition is timely under Section 2244(d)(1)(C).

17

The Court likewise finds that the Petition is untimely under Section 2244(d)(1)(D).  Under that section, a habeas petition may be filed within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  After reviewing the record, the Court agrees with the Magistrate Judge that by 1999, Petitioner "should have known an appeal had not been filed, or at least suspected as much and investigated further."  (Doc. No. 20, PageID #749.)  Thus, under Section 2244(d)(1)(D), the statute of limitations would have run, at the latest, in 2000.

In support of his fifth objection, Petitioner makes several sub-objections.  As explained below, Petitioner's sub-objections do not alter the Court's conclusion that the Petition is untimely.

### i.  Petitioner's objections concerning the journal entries in the record.

Petitioner objects to the Magistrate Judge's finding that "the trial court did not deprive Mr. Brown of his Sixth Amendment right to counsel because: (1) the docket reflects the trial court appointed appellate counsel and notified Mr. Brown of his right to appeal, therefore, the evidence Mr. Brown presents does not suggest a failure to notify appointed counsel."  (Doc. No. 24, PageID #775.)  In support of this objection, Petitioner argues that several findings of fact were "clearly erroneous:"

1. "The Magistrate's finding that [t]he docket reflect[s] that the trial court appointed appellate counsel and notified Petitioner of his right to appeal;"

2. "The Magistrate's finding that the evidence does not suggest a failure to notify the appointed appellate counsel of the appointment"

3. "The Magistrate's finding relating to the docket where the Magistrate Judge did not review the journal entries relating to the lack of notification of counsel appointment argument (sic) not have all the state court records (journal entries) to make his determination;"

18

4. "The Magistrate's finding that the docket reflects the trial court appointed appellate counsel and notified Mr. Brown of his right to appeal as this decision prevent (sic) him from rebutting the presumption of correctness . . . where the journal entries were not reviewed nor placed in the habeas record;" and

5. The Magistrate's finding that the docket reflects the trial court appointed appellate counsel where there is no journal entry on the docket showing that the clerk served notice of the appointment to the appointed counsel's (sic)."

(*Id.* at PageID #776.)

The Court disagrees that these factual findings were "clearly erroneous" as Petitioner suggests. As explained above, the record reflects that the trial court, through a journal entry, appointed appellate counsel and notified Petitioner of his right to appeal. (Doc. No. 8-1, PageID #321). Further, the journal entry appointing Petitioner's appellate counsel is in the record because Petitioner himself filed it with his Traverse. (Doc. No. 10-2, PageID #623–24.) Therein, the journal entry reflects that a copy was sent to his appointed counsel. (*Id.*) Petitioner's objections on this issue are overruled.

### ii.     Petitioner's objections regarding the Sixth Amendment

Petitioner next objects to the Magistrate Judge's finding that "the trial court did not deprive Mr. Brown of his Sixth Amendment right to self-representation." (Doc. No. 24, PageID #781.) Petitioner specifically objects to the seven findings of fact and/or conclusions of law. The Court addresses each in turn.

Petitioner first objects to the Magistrate Judge's finding that "there is no authority requiring a trial court to monitor appellate counsel's actions on appeal. This includes no authority requiring that the trial court verify that appellate counsel file a notice of appeal." (Doc. No. 24, PageID #782.) Petitioner argues that "there is Ohio law" supporting his argument "that the trial court was aware that the appointed counsel did not file the notice of appeal pursuant to App.R.3(A), and Ohio Sup.R. 8." (*Id.*) He further asserts that "pursuant to the holding set forth in *Wolfe v. Randle* . . . courts are

19

required as a matter of law to ensure that an indigent defendant's appellate rights are protected." (*Id.*)

The Court has not identified any authority holding that a trial court must monitor an appellate docket to ensure that appointed counsel files a notice of appeal, and the authority Petitioner cites does not support such a rule of law. *Compare with Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012) ("parties have an affirmative duty to monitor the dockets to keep apprised of the entry of orders that they may wish to appeal"); *State v. Jenkins*, No. 22CA011874, 2023 Ohio App. LEXIS 2606, at *7 (Ohio App. 9th Dist. July 21, 2023) (stating that under Ohio law "[p]arties are charged with the duty to keep themselves apprised of entries upon the court's docket and to monitor the progress of the suit").

Petitioner next objects to the Magistrate Judge's finding that "Petitioner was required as a matter of law to request assistance from the court simply because he may have been aware of counsel performance." (Doc. No. 24, PageID #783.)  Petitioner argues that "there is no legal authority supporting the Magistrate Judge's conclusion that Petitioner was required to give more than one notice to file direct appeal and assistance of counsel" because he "exercised his right to direct appeal and appointment of counsel by notifying the trial court already." (*Id.*)  Contrary to Petitioner's argument, the Magistrate Judge did not hold as a matter of law that he was required to seek assistance from the state court.  Instead, the Magistrate Judge found that Petitioner *could have* reached out to the trial court or the court of appeals when he learned that the appeal had not been filed.  This fact was one, of many, that led the Magistrate Judge to conclude that the Petition was untimely.

Petitioner then objects to the Magistrate Judge's findings that "Petitioner's claimed fear of contacting the trial court makes little sense given the trial court's explanation" and that "there is no reason the trial court would not take appropriate action under circumstances suggesting appellate

counsel was not acting appropriately as counsel." (Doc. No. 24, PageID #783–84.)  Petitioner asserts that these findings of fact are "not supported by the state court record." (*Id.*)  The Court disagrees. Upon review of the record, the Court finds no error in the Magistrate Judge's findings because the journal entry appointing Petitioner's appellate counsel was attached to Petitioner's Traverse.  Therein, the trial court appointed new counsel because "previous counsel . . . withdrew, in that the Defendant indicated to [counsel] that he did have confidence in [him] handling the appeal in this matter." (Doc. No. 10-2.)  Further, the trial court found that "[s]hould Mr. Booker not wish the services of Attorney Asper, he may retain private counsel to represent him pursuant to any order of the Fifth District Court of Appeals or he may represent himself without the benefit of legal counsel." (*Id.*)  This journal entry reflects that the trial court had been very accommodating to Petitioner and would likely have been receptive to a claim that his appointed counsel failed to file the appeal.

Petitioner next argues that "even if the trial court's order did act to preclude or prevent Mr. Brown from requesting new counsel in that court, Mr. Brown's (sic) was required as a matter of law to seek assistance directly from the appellate court." (Doc. No. 24, PageID #784.)  The Magistrate Judge did not find that Petitioner was required to seek assistance from the appellate court.  The Magistrate Judge found that Petitioner *could* have sought assistance from the appellate court once it became clear that appointed failed to file the appeal, which, again, was one fact that led to his correct conclusion that the Petition was time-barred.

Petitioner's final objections are to the Magistrate's findings that "[h]ybrid representation contemplates the defendant and counsel acting as co-counsel and sharing responsibilities" and that "Ohio's bar on hybrid representation did not prevent Mr. Brown from filing a notice of appeal and informing the Fifth District of Attorney Asper's failure to act as counsel." (Doc. No. 24, PageID

21

#785–87.) Under Ohio law, courts are not required to consider *pro se* motions filed by indigent criminal defendants represented by appointed counsel. *State v. Pollard*, No. 110008, 2021 Ohio App. LEXIS 2483, at *6 (Ohio App. 8th Dist. July 22, 2021); *State v. Child*, No. CA2009-03-076, 2010 Ohio App. LEXIS 1503, at *16–17 (Ohio App. 12th Dist. Apr. 26, 2010). While there is a bar to "hybrid representation," the Court agrees with the Magistrate Judge that this rule would not have prohibited Petitioner from alerting the trial court or the appellate court about his appointed counsel's failure to file a timely appeal.

In sum, the Court overrules Petitioner's Sixth Amendment objections.

### iii. Petitioner's objections concerning his outreach efforts

Petitioner's next set of objections concern the Magistrate Judge's findings "[t]hat the alleged actions and inactions of legal groups and attorneys who declined to represent Mr. Brown did not deprive him of his Sixth Amendment right to effective assistance of counsel." (Doc. No. 24, PageID #787.) He argues that "the Magistrate has intentionally misconstrued the issue in its determination of the purpose of Petitioner (sic) actions in contacting the legal groups and attorney" because he "raised the issue . . . to show where he was diligent in pursuing his rights." (*Id.*) He then argues that "the Magistrate Judge abused its discretion" when he "failed to mention/address where the evidence of the communication with the legal [groups] and attorney provide sufficient evidence of diligence." (*Id.* at PageID #788.) The Court finds that the Magistrate Judge considered this argument. (Doc. No. 20, PageID #743, 747–48.) Further, as explained above, the Court agrees with the Magistrate Judge's conclusion that, notwithstanding his outreach efforts, Petitioner did not diligently pursue his rights. The Court therefore overrules Petitioner's objection concerning his outreach efforts to various legal groups and attorneys.

       **iv.**    **Petitioner's objections concerning the Magistrate's findings regarding the timeliness of his Petition**

Petitioner next objects to the Magistrate Judge's finding that "[a]ppellate counsel's ineffective assistance did not prevent Mr. Brown from timely filing a federal habeas petition."  (Doc. No. 24, PageID #790.)  He specifically objects to the Magistrate Judge's finding that "Petitioner has failed to established (sic) nor alleged facts showing, his appellate counsel's ineffective assistance in the state appellate court prevented him from timely filing his habeas petition in this court."  (*Id.* at PageID #791.)  He then objects to the Magistrate Judge not applying *Waldron*.  (*Id.*)  Next, he objects to the Magistrate Judge's finding that "the impediment created by appellate counsel's failure to perfect a direct appeal was removed in 1998 when he began searching for other attorneys to represent him, or in 1999, when the lack of a trial transcript should have alerted him to the absence of a pending direct appeal.  He asserts that this finding "is contrary to the evidence in the record . . . or to clearly established federal law."  (*Id.* at PageID #790–91.)

The Court has already explained above that the Petition is untimely under 28 U.S.C. § 2244(d)(1) and that *Waldron* is not binding.  The Magistrate Judge's findings regarding under 28 U.S.C. § 2244(d)(1) and *Waldron* were supported by law and the record.  The Court overrules Petitioner's objections regarding the timeliness of his Petition.

       **v.**    **Petitioner's final arguments concerning tolling.**

Petitioner's final sub-objection to the Magistrate Judge's findings of fact and conclusions law is the Magistrate Judge's finding that Petitioner "is not entitled to statutory or equitable tolling because: (1) he did not pursue his rights diligently; [and] he did not request assistance from the trial court or the Fifth District to determine the status of his appeal before or after the appellate deadline expired or, given Attorney Asper's alleged failure to communicated, request (sic) the appointment of

new counsel." (Doc. No. 24, PageID #797.)  This final sub-objection merely repeats Petitioner's other objections.  As explained throughout this opinion, the Court finds that neither 28 U.S.C. § 2244(d)(1) nor equitable tolling save the Petition.

In sum, Petitioner's fifth objection is overruled in its entirety.

### 7.  The Court overrules Petitioner's sixth objection[3]

Petitioner's final objection is to the Magistrate Judge's "determination that Ground Three is not cognizable on federal habeas review." (Doc. No. 24, PageID #800.)  He objects to the Magistrate Judge's findings that (1) since "Petitioner has not shown by a preponderance of the evidence that the trial court failed to inform him of his right of appeal, due process is not implicated;" and (2) "[w]here Petitioner challenges the correctness of the Fifth District's decision to deny his motion for leave to file a delayed appeal under Appellate Rule 5(A), he alleges an error under state law that is not cognizable on federal review." (*Id.*)

"Habeas courts have frequently rejected claims challenging the Ohio Court of Appeals' denial of delayed appeal motions under Ohio R. App. P. 5 on the ground that such claims address a collateral matter that is unrelated to the petitioner's detention." *See*, *e.g.*, *Godinez v. Erdos*, No. 3:15-CV-00016, 2016 U.S. Dist. LEXIS 124051, at *23–24 (N.D. Ohio July 18, 2016), *adopted by* 2016 U.S. Dist. LEXIS 124045 (Sept 13, 2016) (citing cases).  Accordingly, the Magistrate Judge correctly concluded that Petitioner's arguments concerning Ohio R. App. R. 5(A) were not cognizable. Further, as already addressed above, "[t]he decision to grant or deny a motion for leave to file a delayed appeal is within the discretion of the Ohio Court of Appeals, and the denial of leave to file is not in itself a violation of due process." *Duett*, 2021 U.S. App. LEXIS 12070 at *4 (citing *Granger*,

---

[3] Petitioner incorrectly labels this objection as the third objection.

24

215 F. App'x at 495).  And the Court has already found that Petitioner's due process rights were not infringed because the trial court informed him of his appellate rights. Therefore, the Court overrules Petitioner's sixth objection.

The Court further finds, in accord with the April 22, 2025 Memorandum Opinion and Order, that there is no clear error in the R&R.  Thus, having overruled all of Plaintiff's objections, the Court finds that Petitioner's Objection fails to establish a meritorious claim or defense warranting relief from judgment under Rule 60(b)(1) or (6).  Thus, Plaintiff's Rule 60(b) Motion is DENIED.

### C. The Court denies Petitioner's Motion to Expand the Record

Petitioner argues in the Motion to Expand the Record that "the Magistrate relies on evidence not currently in the habeas record to support his finding of fact and conclusion of law that docket (sic) show that petitioner was appointed counsel and was notified."  (Doc. No. 26, PageID #852.)  He asserts that "[t]here is no evidence in the habeas record that the trial court ordered via journal entry the appointment of counsel to represent Petitioner on direct appeal, nor is it (sic) any evidence in the habeas record that the trial court ordered via journal entry notification be provided to the appointed counsel."  (*Id.*)  In his Opposition, Respondent argues that "Petitioner's motion is moot as this case has been closed."  (Doc. No. 27, PageID #859.)

Under the Rules Governing Section 2254 Cases, a respondent has discretion to attach to his Answer parts of the record that he considers relevant.  *See* Rule 5(c) of the Rules Governing Section 2254 Cases.  Pursuant to Habeas Rule 5, a district court may thereafter "order that the respondent furnish other parts of the existing transcripts or that parts of untranscribed recordings be transcribed or furnished." *Id*.  Moreover, Habeas Rule 7 provides that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."

*See* Rule 7(a) of the Rules Governing § 2254 Cases.  Habeas Rule 7 "permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition."  *Lynch v. Hudson*, No. 2:07-cv-948, 2010 U.S. Dist. LEXIS 58260, at *7 (S.D. Ohio May 24, 2010).  Interpreting these Rules, the Sixth Circuit has recognized that expansion of the record in habeas cases "is not mandatory . . . and is left to the discretion of the trial judge."  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988); *see also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008); *Bates v. Warden, Chillicothe Correctional Institution*, No. 2:14-CV-01325, 2015 U.S. Dist. LEXIS 120591, at *16 (S.D. Ohio Sept. 10, 2015).

As explained above, the Court declines to grant Petitioner relief from the Court's April 22, 2025 Judgment Entry dismissing the Petition.  As part of the Court's analysis, the Court determined that the journal entry appointing Petitioner's appellate counsel is already in the record, and that the journal entry reflects that it was sent to his appellate counsel.  Therefore, there is no need to expand the record.  Accordingly, the Court DENIES the Motion to Expand the Record.

## V.    Conclusion

For the reasons set forth herein, the Court hereby DENIES Petitioner's Rule 60(b) Motion and DENIES the Motion to Expand the Record. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  December 11, 2025                    U. S. DISTRICT JUDGE

26